

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HERBERT BALONEY | CIVIL ACTION |
| VERSUS | NO. 04-3076 |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | SECTION "B" (2) |

## FINDINGS AND RECOMMENDATION

Plaintiff, Herbert Baloney, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Act. 42 U.S.C. §§ 405(g), 423, 1381a. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

As ordered, plaintiff filed a timely memorandum of facts and law. Record Doc. No. 13. Defendant filed a timely reply memorandum. Record Doc. No. 14.

```
___ Fee_____
___/ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No_____
```

I.   PROCEDURAL HISTORY

Baloney filed an application for SSI and DIB on July 29, 2002, alleging disability since May 15, 1999 because of problems with his back, right knee and right arm and pancreatitis. (Tr. 37-39, 50, 365-67).

After plaintiff's application was denied, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 7, 2003. On December 15, 2003, the ALJ denied plaintiff's application. (Tr. 11-20). After the Appeals Council denied review on September 10, 2004 (Tr. 4-6), the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.

II.  STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.  The ALJ erred in that his assignment of residual functional capacity and his hypothetical to the vocational expert based on that residual functional capacity were not supported by substantial evidence.

B.  The ALJ erred in failing to find that plaintiff meets the requirements of the Medical-Vocational Guidelines.

III. ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.  Plaintiff was engaged in substantial gainful activity until May 15, 2001, but has not engaged in substantial gainful activity since that date.

    2.    Baloney's mild degenerative disc disease of the cervical and lumbar spine with cervical and lumbar strain, degenerative joint disease of the right knee, chronic pancreatitis and peptic ulcer disease are severe impairments.

    3.    His impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

    4.    Plaintiff's allegations regarding his limitations are not totally credible.

    5.    Baloney has the residual functional capacity to perform light to medium exertional level work that requires lifting and/or carrying no more than 40 pounds occasionally and 20 pounds frequently, and requires no more than occasional climbing, balancing, kneeling or crawling.

    6.    He can return to his past relevant work as a security guard and a porter.

(Tr. 16, 19).

## IV. ANALYSIS

### A. Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir.

1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for DIB and SSI,[1] plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2003). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2] The five-step

---

[1] The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

[2] The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Newton, 209 F.3d at 453. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." Martinez, 64 F.3d at 174.

B.   Factual Background

Plaintiff testified that he was born in 1946, is 5'5" tall and right-handed and has not experienced any recent weight gain or loss. He said he completed the ninth grade and

---

the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (2003) ("Medical-Vocational Guidelines").

later obtained a GED. (Tr. 377). He stated that he served in the National Guard for about two months in 1973 and received an honorable medical discharge. (Tr. 378).

Baloney said he is currently working an eight-hour shift three days per week as a hotel security guard, although he also said he does not always work that much each week. He stated that the job involves walking around to check on various posts once every hour and sitting between the hourly walks. (Tr. 378-79). He testified that he has been working for the security company, Bayou State, for about five years and started working part-time about five months before the hearing.

Plaintiff testified that he had previously worked in construction for about six months and as a security guard for another security company before that. He said that he would stand for four to five hours on that job and sit the rest of the time. (Tr. 379-80). He stated that he had worked as a porter in a kitchen, washing and cleaning, for two and one-half years before he had the security guard job. He said he was injured in May 2001, while he was working at the Hilton, and did not work again after that.

Baloney said that he was injured when a truck cut in front of a public bus on which he was a passenger and the bus stopped suddenly, sending him into the seat in front of him. He said he hit his knee and pulled his neck and back when the bus hit the truck. (Tr. 380-81). He stated that his lower back hurts and that the pain radiates into the back of his

legs. Plaintiff also said that his shoulders hurt a lot of the time and sometimes he has numbness.

Baloney testified that he has pain in his neck, even when he is sitting, and he has numbness in his neck, into his head and down into his shoulders, as if they have a lot of weight on them. He stated that his knee stays tight, especially when he gets up in the morning, and that he has to ask the bus driver to lower the handicapped step so that he can get on the bus. He said he has a lot of pain in his knee and that Flexeril helps for about two hours, but then the pain returns. He rated the pain in his knee as sometimes eight or nine on a scale of one to ten, with ten being the most severe. He said he has no side effects from his medications. (Tr. 381).

Plaintiff stated that he stopped drinking alcohol 23 years ago. He testified that he currently lives at a Salvation Army facility for six dollars a day. He said that he is trying to get custody of his son through the court system and that a caseworker is helping him. He stated that once he gets an apartment, the Salvation Army will pay for the first month's rent and utilities.

Baloney said he takes care of his personal needs. He said that, when he leaves the Salvation Army facility each day, he eats breakfast and sometimes takes the bus across

the river to visit his sister for a few hours before he returns to the Salvation Army. He testified that he works at night if the security company calls him to work. (Tr. 382).

Plaintiff testified that he could not work full-time as a security guard because he would not be able to stand the pain in his back and because he gets a lot of stiffness and pain in his neck. He said that sometimes his knee tightens up and he has to sit down. He stated that he often tells the company that he needs time off and that the company does not like him to take time off. He estimated that he could stand for 60 to 90 minutes, but sometimes he has to sit down after standing for 15 minutes. He testified that he has to sit down and relax his body because the pain grips his shoulder and his neck.

Baloney estimated that he can walk three to four blocks, lift "maybe 40 pounds or so".and sit for 60 to 90 minutes until his back starts to hurt and he has to move around to relieve it a little bit. (Tr. 383). He said he does not lift anything as part of the duties of his current job. He testified that he takes Flexeril and that a doctor at Louisiana State University Health Services Center had given him some Percocet tablets, but he ran out of them and was told he could not take too much of that medication. (Tr. 384).

Plaintiff stated that some of the prescriptions he has received cost as much as $50 and he cannot afford to get them filled. He said his doctors told him to take Tylenol if he

cannot fill his prescriptions. He testified that Tylenol relieves the pain for a little while, but the effect does not last. (Tr. 385).

Plaintiff testified that he takes a public bus to his job. He said that he works from 10:00 p.m. to 6:00 a.m. and that he does not carry a gun or mace. He said he works for the same company that he worked for in the past and that he had never carried a weapon in his previous jobs. He said that his job in 1999 and 2000 was a cleaning job at the Hilton Hotel. (Tr. 387).

Baloney stated he had been told that his chronic pancreatitis was the result of drinking but that he has not had a drink in more than 20 years. (Tr. 388).

C. Vocational Expert Testimony

Patricia Ehlinger, a vocational expert, testified. The ALJ posed a hypothetical of a 57-year-old individual with a GED and plaintiff's past relevant work history, who can lift 40 pounds occasionally and 20 pounds frequently; can only occasionally climb, balance, stoop, kneel, crouch and crawl; and cannot climb ladders, ropes or scaffolds. (Tr. 390). Ehlinger opined that such a claimant could return to plaintiff's past relevant work as a security guard and as a porter, as he described the job.

The vocational expert testified that an employee would be subject to termination if he missed more than one or two days of work per month. (Tr. 391). She stated that

most eight-hour jobs permit a lunch break and two fifteen-minute breaks, with additional brief breaks for using the rest room or getting a drink of water. She said that, if an employee could not maintain this schedule and needed unscheduled breaks to lie down or rest during normal work hours, he would not be able to maintain the job. (Tr. 392).

Under cross-examination, Ehlinger testified that a person who suffered from frequent interruptions in concentration, persistence and pace as a result of pain could not perform plaintiff's past relevant work. (Tr. 392-93).

D.   Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 16-17). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections, and highlights noted below.

E.   Plaintiff's Appeal

   1.   *The ALJ's assignment of residual functional capacity and his hypothetical to the vocational expert based on that residual functional capacity were supported by substantial evidence.*

Plaintiff argues that the ALJ's assignment of residual functional capacity and his hypothetical to the vocational expert based on that residual functional capacity were not supported by substantial evidence. The ALJ found at the fourth step of the sequential

evaluation that Baloney has the residual functional capacity to perform light to medium exertional level work that requires lifting and/or carrying no more than 40 pounds occasionally and 20 pounds frequently, and requires no more than occasional climbing, balancing, kneeling or crawling. Based on this residual functional capacity, the vocational expert testified, and the ALJ found, that Baloney could return to his past relevant work as a security guard and a porter.

Baloney contends that the ALJ erred because no examining physician ever assigned any limitation on the amount that plaintiff could lift. Thus, he argues, the ALJ's assignment of a weight restriction of 20 to 40 pounds is not based on substantial evidence. Plaintiff also contends that the ALJ erred by relying on the opinion of orthopedist F. Allen Johnston, M.D., who released plaintiff to work on December 5, 2001 with no restrictions, but who allegedly provided no rationale for his release decision. (Tr. 300). Finally, Baloney asserts that the ALJ failed to take account of his limited ability to stand. He notes that his repeated emergency room visits after being released by Dr. Johnston reflect that he continued to have severe pain in his knee and back.

Substantial evidence supports the ALJ's findings. The ALJ found that Baloney's mild degenerative disc disease of the cervical and lumbar spine with cervical and lumbar strain and degenerative joint disease of the right knee are severe impairments, which

could be expected to produce some limitations on lifting. When internist Norman D. Ott, III, M.D., released plaintiff to return to work and discharged him from his care on October 3, 2001, to be followed by orthopedist Dr. Johnston, Dr. Ott noted that plaintiff should use general caution with lifting. (Tr. 275). Plaintiff testified that he could lift 40 pounds (Tr. 383), which the ALJ assigned as the upper limit for occasional lifting.

Dr. Johnston's release note dated December 5, 2001 is supported by his records of medical examinations and objective tests over the preceding four months. (Tr. 290-99). Baloney's subjective and objective symptoms had improved since he first presented to Dr. Johnston on September 5, 2001. (Tr. 290-91). As of November 21, 2001, Dr. Johnston found that Baloney had only mild tenderness in his neck, back and knee and had "essentially full" range of motion in his cervical area, "near full" range of motion with negative straight leg raising test and no muscle spasms in his lumbar spine and full range of motion without any crepitance or effusion in his right knee. (Tr. 298-99).

Repeated physical examinations and objective testing at the emergency room and clinics at the Medical Center of Louisiana from late 2001 through July 2003 consistently showed that Baloney has normal muscle strength, full range of motion and intact neurological responses in his neck, back and extremities, without joint deformities, swelling, difficulty in ambulating, muscle atrophy or muscle spasms. As the ALJ

accurately described, the objective medical evidence substantially supports the conclusion that plaintiff suffers from only mild degenerative disc disease in his back and neck and mild degenerative joint disease in his right knee. (Tr. 16-17). This evidence substantially supports the ALJ's findings concerning plaintiff's lifting ability.

> Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. The determination whether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence. Moreover, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling. Subjective complaints of pain must also be corroborated by objective medical evidence.

Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001) (citations omitted).

The ALJ found that Baloney's subjective descriptions of his limitations were not totally credible when assessed in light of the complete record. The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and his evaluation is entitled to considerable deference by this court. Falco v. Shalala, 27 F.3d 160, 164 & n.18 (5th Cir. 1994); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Villa, 895 F.2d at 1024. The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that is required. Falco, 27 F.3d at 163-64; Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999)

(Vance, J.); accord James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 164).

In assessing plaintiff's credibility, the ALJ noted that Dr. Ott opined that he had magnified his symptoms, and that both Dr. Ott and Dr. Johnston had released Baloney to work without any restrictions. No other treating doctor placed any restrictions on plaintiff's ability to work. The ALJ also noted correctly that the medical records indicate that Baloney could walk without difficulty and had no muscle spasm, muscle atrophy or neurological deficits suggestive of seriously limiting pain and that the medications prescribed for him relieved his pain. Furthermore, the ALJ found that plaintiff's ability to work an eight-hour shift three nights a week as a security guard undermined his credibility concerning allegedly more serious limitations in his abilities to walk and sit. These findings are substantially supported by the record.

Baloney contends that he is disabled, despite his admission that prescribed drugs relieve his pain, because he is homeless and cannot afford to pay for the drugs. A medical condition that can reasonably be remedied by surgery, treatment or medication is not disabling. Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988); Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987); Bridges v. Massanari, No. 00-2639, 2002 WL 202221, at *3 (E.D. La. Feb. 7, 2002) (Vance, J.).

In addition, such treatment must actually be available to the claimant. Lovelace, 813 F.2d at 59. The record supports plaintiff's financial inability to fill his prescriptions and the ALJ'S finding that he used the emergency room for treatment and to obtain limited amounts of medications. "If a claimant cannot afford a prescribed treatment, an otherwise remediable condition may be deemed disabling." Tamez v. Sullivan, 888 F.2d 334, 336 (5th Cir. 1989) (citing Lovelace, 813 F.2d at 59) (additional citations omitted).

The ALJ found that Baloney had been counseled at length by a social worker during his hospitalization in August 2002 and had been referred to Homeless Health Care to obtain prescription medications, but that plaintiff had not taken advantage of that option. However, in Tamez, 888 F.2d at 336; Harper v. Sullivan, 887 F.2d 92, 97 (5th Cir. 1989); and Villa, 895 F.2d at 1024, the Fifth Circuit held that an ALJ properly considered the failure of a claimant to take medication or follow a prescribed course of treatment, even though the plaintiff claimed that these failings were prompted by his indigence. The court held in each case that the plaintiff's inability to pay was not relevant because the evidence did not establish initially that he would have been disabled with or without regular medical treatment. The Fifth Circuit has held that the Lovelace "'rule does not encompass claims of persons who can prove no disability but only seek benefits

as a means of affording care that might conceivable [sic] prevent a disability.'" Harper, 887 F.2d at 97 (quoting Burnside on Behalf of Burnside v. Bowen, 845 F.2d 587, 592 (5th Cir. 1988)).

In the instant case, the ALJ'S finding that plaintiff is not disabled because he retains the residual functional capacity to perform work with the restrictions stated in his opinion is supported by substantial evidence. Thus, Baloney's inability to pay for prescription medications does not render him disabled because he has not established that he has a disability in the first instance.

Finally, plaintiff also argues that the ALJ erred by finding that he has past relevant work as a security guard because he was only working part-time as a security guard at the time of the hearing, which was not substantial gainful activity. However, Baloney testified that he had previously worked as a security guard before he was injured in 2001. His written submissions to the SSA confirm that he worked as a full-time security guard for several years. (Tr. 51, 60). Thus, he had past relevant work as a security guard.

Accordingly, this assignment of error is meritless.

> 2. *The ALJ did not err in failing to find that plaintiff meets the requirements of the Medical-Vocational Guidelines.*

The ALJ found at the fourth step of the sequential evaluation that Baloney can return to his past relevant work as a security guard or a hotel porter. Plaintiff argues that,

if the ALJ had assigned him a proper residual functional capacity with only the ability to work at sedentary jobs, the ALJ should have found him disabled under the Medical-Vocational Guidelines.

Once the ALJ finds that plaintiff can return to his past relevant work at the fourth step, the inquiry ends and the ALJ need not proceed to the fifth step. The Medical-Vocational Guidelines are applied only at the fifth step. Therefore, the ALJ did not err by failing to apply the Medical-Vocational Guidelines.

## CONCLUSION

The ALJ did not err in his assignment of plaintiff's residual functional capacity or in his failure to apply the Medical-Vocational Guidelines. Substantial evidence in the record supports the ALJ'S findings.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 14th day of July, 2005.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE